ANNETTE L. HURST (Bar No. 148738)
DANIEL N. KASSABIAN (Bar No. 215249)
ELISABETH R. BROWN (Bar No. 234879)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, California 94104-2878
Telephone: +1.415.772.6000
Facsimile:   +1415.772.6268
Email:  Annette.Hurst@HellerEhrman.com
        Daniel.Kassabian@HellerEhrman.com
        Elisabeth.Brown@HellerEhrman.com

Attorneys for Plaintiffs
GYM-MARK, INC. and THE GYMBOREE CORPORATION

MARTHA C. LUEMERS (Bar No. 104658)
DORSEY & WHITNEY LLP
1717 Embarcadero Road
Palo Alto, California 94303
Telephone: +1.650.857.1717
Facsimile: +1.650.857.1288
Email: efilingPA@dorsey.com

BRUCE R. EWING (*pro hac vice*)
DORSEY & WHITNEY LLP
250 Park Avenue
New York, New York 10177-1500
Telephone: +1.212.415.9200
Facsimile:   +1.212.953.7201
Email:  Ewing.Bruce@dorsey.com

Attorneys for Defendants
CHILDREN'S APPAREL NETWORK, LTD. and MERVYN'S LLC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GYM-MARK, INC. and GYMBOREE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CHILDREN'S APPAREL NETWORK, LTD. and MERVYN'S LLC, <br><br> Defendants. | Case No.: C 07-03523 (JW) (HRL) <br><br> **JOINT CASE MANAGEMENT CONFERENCE STATEMENT** |

Heller
Ehrman LLP

In accordance with the Court's Standing Order and the Order Setting Initial Case Management Conference and ADR Deadlines, the parties hereby submit this Joint Case Management Conference Statement in advance of the Case Management Conference scheduled for December 3, 2007 at 10:00 a.m.

## I. JURISDICTION AND SERVICE

### A. Subject Matter Jurisdiction

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1367.

### B. Venue

Venue is proper in this District pursuant to 28 U.S.C. § 1400(a).

### C. Personal Jurisdiction and Service

Plaintiffs have served all named defendants and defendants do not contest service. During the Rule 26(f) conference Defendant CAN disclosed that, in addition to Mervyn's, it sold the products that are at issue in this litigation to approximately 100 other retailers. Plaintiffs submit that these retailers ("Additional Retailers") are potential defendants in this case. Plaintiffs have requested identifying information concerning the Additional Retailers and may seek to add them as additional defendants to this action as appropriate.

## II. DESCRIPTION OF THE CASE

### A. Facts

#### 1. Plaintiffs' Allegations of the Facts

Plaintiff The Gymboree Corporation ("Gymboree") is a highly regarded and widely recognized specialty retailer of children's apparel. For over twenty years, the Gymboree® brand has symbolized unique, high-quality children's clothing. Gymboree is the parent company of Plaintiff Gym-Mark, Inc. ("Gym-Mark) and is the exclusive licensee for copyrighted clothing designs owned by Gym-Mark. Among the unique designs Gym-Mark has licensed to Gymboree is the "GIRL/BABYGIRL/KIDGIRL SUMMER I FIESTA 2006" line (United States Copyright Registration No. VAu682-370, dated November 18, 2005), which includes "FIESTA FLOWERS &

Heller
Ehrman LLP

CROCHET INSET" and "FIESTA FLOWERS WITH LADYBUGS" ("Infringed Designs"). Both Infringed Designs incorporate original and appealing fabric patterns for machine crewel embroidery. The FIESTA FLOWERS & CROCHET INSET design features artful arrangements of red, tangerine-color, and light purple flowers of different shapes and sizes with a garland of leaves connecting the flowers in the arrangement. The FIESTA FLOWERS WITH LADYBUGS design features an original red, tangerine-color, light purple and hibiscus-color flowers, with green leaf and stem accents, and ladybugs with swirling broken-line trails as a fanciful indicator of their flight amongst the flowers.

Plaintiffs contend that, by at least May 2007, Mervyn's began selling children's apparel manufactured at the direction of CAN that bear embroidery designs substantially similar to, and infringing of, the "FIESTA FLOWERS & CROCHET INSET" and "FIESTA FLOWERS WITH LADYBUGS" copyrighted designs (the "Knockoffs"). In contrast to the high-quality Gymboree® versions, the Knockoffs use less stitching and precision, are made of cheaper fabric, and were sold at a lower price point in Mervyn's. Despite these quality differences, however, the overall appearance of the Knockoffs is substantially similar to the Gymboree clothing, incorporating similar arrangement, colors, shapes, sizes and placement of the unique shapes.

Defendants had access to the Infringed Designs by at least April 2006, when Gymboree® began selling them nationwide throughout the approximately 550 Gymboree® stores and on its web site located at <www.gymboree.com>. Plaintiffs believe that discovery in this case will show that CAN based its products on Gymboree's designs and that its infringement was willful.

2.    <u>Defendants' Allegations of the Facts</u>

Defendant CAN is a supplier and distributor of children's apparel that has been in business for decades. Defendant Mervyn's is one of many retailers located around the United States and overseas that markets children's apparel supplied by CAN.

Among the many styles of garments sold by CAN during its Spring 2007 season were two styles of dress sets for toddler girls that are at issue in this action. These garments were designed and developed by CAN without the assistance or involvement of Mervyn's and the "Additional Retailers," all of whom merely ordered and sold goods supplied by CAN.

Heller
Ehrman LLP

3

The garments sold by CAN contain floral embroidery patterns (sometimes accompanied by ladybugs) that CAN believed to be commonplace and not subject to copyright protection, and CAN was unaware of the existence of the copyright registration asserted by Plaintiffs in this proceeding until after this lawsuit was brought.

While there are certain similarities between the CAN garments at issue in this action and the garments sold by Plaintiffs upon which their claims are premised, most of those similarities – in terms of colors, fabric patterns and textures – involve non-protectable elements. The only aspect of Plaintiffs' garments that could theoretically be protectable is the floral embroidery patterns that are subject to United States Copyright Registration No. VAu682-370, but these patterns are so commonplace and unoriginal that they too are not protectable.

To the extent Plaintiffs' embroidery patterns possess any degree of originality, the patterns used on CAN's garments are dissimilar and certainly not "virtually identical," as the law requires in a case where "thin" copyright protection is at issue.

### B.  **Legal Issues**

Plaintiffs Gym-Mark and Gymboree have asserted claims against Defendants CAN and Mervyn's LLC for copyright infringement and unfair competition arising from the alleged infringement outlined *supra* in section II.A.1.

Defendants dispute the originality, and therefore the protectability, of Plaintiffs' allegedly copyrighted designs and further deny that the parties' respective designs are sufficiently similar to give rise to a claim of copyright infringement. Defendants further submit that Plaintiffs' claim for unfair competition is preempted by the U.S. Copyright Act.

### C.  **Relief Sought**

Plaintiffs assert that they are entitled to a judgment that Defendants have infringed Plaintiff's copyright in the Infringed Designs and a permanent injunction prohibiting Defendants from further infringement of Plaintiff's copyrights and engaging in unlawful, unfair, and fraudulent business acts. Plaintiffs seek to recover all profits attributable to the infringement, both direct and indirect, or enhanced statutory damages, whichever is greater. Plaintiffs further seek an award of attorneys' fees and costs.

Defendants assert that Plaintiffs are not entitled to any relief whatsoever.

### III. MOTIONS

At present, no motions have been filed. Defendants may seek dismissal of Plaintiffs' second claim for unfair competition on the ground that it is preempted by the U.S. Copyright Act. In addition, motions may be necessary should discovery disputes arise.

### IV. AMENDMENT OF PLEADINGS

Plaintiffs anticipate filing an Amended Complaint following CAN's identification of the Additional Retailers who, like Mervyn's, sold allegedly infringing apparel manufactured by CAN.

### V. EVIDENCE PRESERVATION

The parties have taken reasonable steps to preserve documents within their possession. In addition, the parties have met and conferred concerning what Plaintiffs contend is CAN's obligation to notify the Additional Retailers of the above-captioned litigation and inform them of their duty to preserve evidence relevant thereto. Plaintiffs described to CAN the type of discovery they intend to request from the Additional Retailers and expect CAN to work with the Additional Retailers to ensure preservation efforts are underway. CAN disputes that it has the obligation to ensure that third-party retailers who are not under its control are advised of this lawsuit or that they must preserve materials that Plaintiffs contend are relevant to this lawsuit. Defendants further dispute the relevance of certain materials that Plaintiffs contend must be preserved.

### VI. INITIAL DISCLOSURES

The parties have agreed to exchange Initial Disclosures on November 29, 2007.

### VII. DISCOVERY

#### A. Discovery Schedule

No discovery has taken place to date. The parties propose the following schedule which includes specific deadlines and an approximate trial date:

| Event | Date |
| --- | --- |
| Last Day to Amend Pleadings / Add Parties | May 5, 2008 |
| Initial Disclosures | November 29, 2007 |
| Produce all Documents and Privilege Logs | June 13, 2008 |

Heller Ehrman LLP

5

| | |
|---|---|
| Close Fact Discovery | July 25, 2008 |
| Expert Discovery | |
|     Each party identifies experts on issues for which party bears the burden of proof | August 15, 2008 |
|     Opening Reports | August 15, 2008 |
|     Rebuttal Reports | September 15, 2008 |
|     Close of Expert Discovery | October 15, 2008 |
| Last Date to File Dispositive Motions | November 17, 2008 |
| Trial | February 2009 |

**B.** **<u>Discovery Limits</u>**

Plaintiffs' Position:

The default limit on depositions set forth in Federal Rules of Civil Procedure 30 and 31 is going to be too low in light of CAN's disclosure that there are 100 Additional Retailers who sold the Knockoffs. Gymboree has requested identifying information regarding the Additional Retailers in an effort to fashion a discovery proposal, but CAN refused to provide it. Accordingly, at this time Gymboree requests that the Court permit it to take up to 10 depositions of witnesses affiliated with the current Defendants, and place no limit on the number of depositions necessary to conduct discovery of the Additional Retailers. Plaintiffs contend the Additional Retailers are potential defendants to this litigation and anticipating discovery directed toward them is appropriate. Plaintiffs further contend that whether the parties can craft limitations to avoid cumulative testimony from the Additional Retailers can only be determined after CAN discloses their identities.

Defendants' Position:

Defendants have voluntarily turned over to Plaintiff their complete sales information for the goods at issue, along with detailed calculations of their costs. They have declined, however, to

Heller Ehrman LLP

identify by name the "Additional Retailers" in the absence of a formal discovery request.

Defendants see no need to vary the presumptive limits on depositions set forth in Fed. R. Civ. P. 30 and 31, in part because any discovery needed from the Additional Retailers would consist primarily of sales records for which no deposition testimony should be necessary, and in part because allowing Plaintiffs to take more than 100 depositions would be cumulative and wasteful. In any event, there is no need for the Court to address this issue at this time. If, as discovery progresses, Plaintiffs believe they need more than the ten depositions per side contemplated by the Federal Rules, they are free to seek such relief at the time and offer a particularized showing to the Court as to why they need to exceed the limit.

### C. Electronic Discovery and Document Production

The parties agree to produce electronic information and documents in a TIFF format with certain metadata included if available (i.e., file location, author/sender, recipient, date created, last date modified, date sent, attachment cross-reference, page breaks), and that parties produce electronic documents in a text searchable format, to the extent the original documents are text searchable. The parties further agree to produce specifically identified documents in native format, to the extent such document is not reasonably readable in a TIFF format. With respect to hard copy documents, the parties agree either to scan and produce these documents in a TIFF format, with appropriate page breaks, or produce said documents in paper format. These documents should be produced in an order that replicates how they were kept in the ordinary course of business, and the production will include associated file folder headings, post-it notes, etc.

## VIII. CLASS ACTIONS

This case is not a class action.

## IX. RELATED CASES

There are no related cases or proceedings pending before another judge of this court, or before another court or administrative body.

## X. SETTLEMENT AND ADR

The parties have engaged in informal settlement discussions and, pursuant to Local ADR Rule 3-5, have agreed to court-sponsored mediation. The parties anticipate holding a settlement

Heller Ehrman LLP

7

JOINT CASE MANAGEMENT STATEMENT
Case No.: C-07-03523 (JW) (HRL)

conference after the beginning of the year, although Plaintiffs believe that Defendants should provide Plaintiffs with sufficient information to have reasonable certainty as to the value of their claims.

## XI. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

Defendants do not consent to have a magistrate judge conduct all further proceedings including trial.

## XII. OTHER REFERENCES

The Court appointed Magistrate Judge Lloyd for discovery issues. The parties see no need for any other reference.

## XIII. NARROWING OF ISSUES

This is a fairly simple and straightforward case. The parties agree it is neither necessary nor desirable to bifurcate issues for trial.

## XIV. EXPEDITED SCHEDULE

The Parties do not believe this is the type of case that can be handled on an expedited basis with streamlined procedures.

## XV. TRIAL

Plaintiffs have requested a trial by jury and the parties estimate the trial will last one to two weeks.

## XVI. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

The parties have filed their respective "Certifications of Interested Entities or Persons" as required by Local Civil Rule 3-16. Plaintiff Gym-Mark, Inc. is a wholly owned subsidiary of Plaintiff The Gymboree Corporation. The Gymboree Corporation is a publicly traded company, of which more than 10% is owned by the FMR Corporation and Goldman Sachs Asset Management, L.P. The parent company of Defendant Mervyn's is Mervyn's Holdings, LLC and no publicly held corporation owns more than 10% of its stock. CAN has no parent company and no publicly held corporation owns more than 10% of its stock.

//

//

Once CAN discloses the identities of the Additional Retailers, Plaintiffs anticipate the list of interested parties will grow.

Date:   November 26, 2007

By:   ____/s/ *Annette L. Hurst*_____         By: ____/s/ *Bruce R. Ewing*_____
    Annette L. Hurst                                              Bruce R. Ewing
    Attorney for Plaintiffs                                       Attorney for Defendants

ATTESTATION OF E-FILED SIGNATURE

I, Annette L. Hurst, attest that Bruce R. Ewing has read and approved the Joint Case Management Conference Statement. I will maintain records of Mr. Ewing's concurrence in our files that can be made available for inspection upon request.

    /s/*Annette L. Hurst*_____
    Annette L. Hurst